UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


MEDICAL MUTUAL OF OHIO,        )     Case No.: 1:16 CV 80
                       )
       Plaintiff            )     JUDGE SOLOMON OLIVER, JR.
                       )
       v.                 )
                       )
AIR EVAC EMS, INC.,          )
                       )
       Defendant        )     <u>ORDER</u>


Currently pending before the court in the within case is Defendant Air Evac EMS, Inc.'s ("Air Evac" or "Defendant") Motion for Partial Summary Judgment (ECF No. 47), and Plaintiff Medical Mutual of Ohio's ("MMO" or "Plaintiff") Motion for Partial Summary Judgment (ECF No. 45). Also pending is Air Evac's Motion to Strike MMO's Belatedly Disclosed Evidence ("Motion to Strike") (ECF No. 53). For the following reasons, the court grants Air Evac's Motion for Partial Summary Judgment as to the following: MMO's ERISA preemption claim (Count II); MMO's claim of ADA preemption regarding Air Evac's breach of contract claim (Count I); and MMO's claim of unjust enrichment (Count III). The court denies Air Evac's Motion for Partial Summary Judgment as to the following: Air Evac's breach of contract counterclaim (Counterclaim Count I); and MMO's claim of ADA preemption regarding Air Evac's quantum merit claim (Count I). The court denies

MMO's Motion for Partial Summary Judgment, and also denies Air Evac's Motion to Strike as moot.

## I. FACTS AND PROCEDURAL HISTORY

MMO is an Ohio-based health insurer. (Compl. at ¶ 1, ECF No. 1.) Air Evac is an air ambulance service provider which operates in several states, including Ohio. (Decl. of Seth Myers ("Myers Decl.") at ¶ 4, ECF No. 47-3.) Though MMO has express contracts with other air ambulance service providers setting the rates for services provided to MMO-insured patients, it does not have a contract with Air Evac. (Decl. of David Quiring ("Quiring Decl.") at ¶ 3.) In the fall of 2014, MMO offered to contract with Air Evac at specified rates, but Air Evac rejected the offer. (Dep. of Angela Richmond ("Richmond Dep.") at Ex. 230, ECF No. 55-8.) Air Evac countered with an offer which would require MMO to pay 97 percent of Air Evac's billed charges, which MMO did not accept. (*Id.*; Dep. of Michael Preissler ("Preissler Dep.") at 129–31, ECF No. 55-1.) Nonetheless, Air Evac or its affiliates have provided air ambulatory services to MMO-insured patients and submitted invoices for reimbursement to MMO. (Decl. of Eric Thomas ("Thomas Decl.") at ¶ 4.)

In some instances between 2009 and 2016, MMO paid the charges billed by Air Evac, either in part or in full. (*Id.* at ¶¶ 6, 9.) However, Air Evac claims that MMO paid $5,031,751 less than the billed charges on 314 MMO-insured patient transports between 2009 and 2016. (Def.'s Mot. for Partial Summ. J. 4–6.) MMO alleges that Air Evac's fees are as much as three times the rates which it authorizes for its contracted partners. (Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. 3, ECF No. 55.) Furthermore, MMO contends that it has no obligation to pay Air Evac any amount without an express contract between the two entities. (Compl. at ¶ 33.) In response, Air Evac filed suit on November 25, 2015, in the Cuyahoga County Court of Common Pleas for breach of implied contract

-2-

and quantum meruit.[1] (Opp'n to Mot. for J. on the Pleadings 2, ECF No. 16.)

On January 13, 2016, MMO filed a Complaint in this court against Air Evac, alleging three counts: (1) a declaratory judgment that the Airline Deregulation Act ("ADA") preempts Air Evac's state law claims; (2) a declaratory judgment that the Employee Retirement Income Security Act ("ERISA") preempts Air Evac's state law claims; and (3) a claim for unjust enrichment to recover MMO's previous payments to Air Evac. On March 18, 2016, Air Evac filed an Answer to Complaint and Counterclaim (ECF No. 7), alleging claims for (1) breach of implied contract, and (2) a declaratory judgment that the provisions of the Patient Protection and Affordable Care Act ("ACA"), when read with the ADA, preempts challenges to prices set by air carriers in a competitive market. The state court has stayed its action while the present case is pending. (*Id.* at 2 n.3.)

On February 28, 2017, the court denied Air Evac's Motion for Judgment on the Pleadings. (Order of Feb. 28, 2017, ECF No. 33.) On November 27, 2017, Air Evac filed its Motion for Partial Summary Judgment, in response to which MMO filed its Opposition (ECF No. 54) on January 17, 2018. Air Evac then filed its Reply (ECF No. 57) on February 7, 2018. MMO also filed a Motion for Partial Summary Judgment on November 27, 2018, in response to which Air Evac filed an Opposition (ECF No. 52) on January 17, 2018. MMO filed its Reply (ECF No. 58) on February 7, 2018. Additionally, on January 17, 2018, Air Evac filed its Motion to Strike. MMO filed an Opposition (ECF No. 59) to the Motion to Strike on February 7, 2018, and Air Evac filed its Reply (ECF No. 61) on February 14, 2018.

---

[1] *Air Evac EMS, Inc. v. Medical Mutual of Ohio*, No. CV-15-854950 (Cuyahoga Cty. Ct. Com. Pl. filed Nov. 25, 2015).

## II. LEGAL STANDARD

The Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F.Supp.2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

Both parties move the court for partial summary judgment. Air Evac asks the court to enter summary judgment dismissing all of MMO's claims. Air Evac also asks the court to enter summary judgment granting Air Evac's breach of contract counterclaim and ordering MMO to pay Air Evac's charges as billed. On the other hand, MMO asks the court to enter summary judgment in its favor on Air Evac's breach of contract claim to the extent that it challenges MMO's coverage determinations on ERISA-governed health plans. The court addresses each matter below.

## A. ERISA Preemption and Motion to Strike

Air Evac moves for summary judgment on MMO's claim, in Count II, seeking declaratory judgment establishing that ERISA preempts Air Evac from recovering fees for services provided to MMO-insured patients covered by plans governed by ERISA. Air Evac argues that discovery has shown that its claims do not relate to any term of an ERISA plan and thus, its claims are not subject to ERISA preemption. Specifically, Air Evac contends that MMO's corporate witness admitted that in paying—or declining to pay—Air Evac's billed charges, MMO makes no reference to the terms of the underlying health plan. It adds that it could not have relied on the terms of any ERISA plan in bringing its claim because such plans have not been provided to Air Evac by MMO.

On the other hand, MMO moves for summary judgment on Air Evac's breach of contract counterclaim to the extent that it challenges services to MMO-insured patients covered by ERISA plans. MMO states that it denied coverage, under ERISA plans, for Air Evac services on twelve occasions during the period at issue. MMO indicates that it cited "lack of medical necessity" in eleven of those instances. It argues that ERISA plans provide the standard for determining medical necessity. In support of its argument, MMO presents the Declaration of David Quiring, Executive Vice President and Chief Experience Officer for MMO, as well as a summary chart which lists the twelve claims and states that basis for denial as lack of medical necessity or lack of eligibility. In response, Air Evac argues that MMO has not demonstrated that the twelve plans identified by MMO were subject to ERISA, nor that the resolution of those twelve claims required reference to the ERISA plan. Challenging MMO's evidence as merely conclusory, Air Evac presents its own evidence—including declarations and payment notices sent by MMO—in support of its argument that the twelve denials of coverage identified by MMO were subject to contradicting assertions or

are subject to challenge. For example, it presents evidence indicating that in two of the twelve instances identified by MMO, MMO stated that services were in fact medically necessary. (Declaration of Melissa Gilbreath at ¶¶ 5, 9, ECF No. 52-1.) Additionally, it argues that the definition of medical necessity in the context of emergency care is provided by a different federal statute, not by ERISA.

Previously, the court denied Air Evac's Motion for Judgment on the Pleadings as to MMO's claim of ERISA preemption. After a detailed analysis of ERISA preemption,[2] the court determined that MMO's ERISA preemption claim turned on whether the "remedy sought is primarily [ERISA] plan related." (Order of Feb. 28, 2017, 14) (citing *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007)). Furthermore, the court explained that "[i]n determining whether a remedy is primarily plan related, the court must determine whether the claim requires evaluating the plan and the parties' performance under it." (Order of Feb. 28, 2017, 15) (citing *Thurman*, 484 F.3d at 861; *Zuniga v. Blue Cross & Blue Shield of Michigan*, 52 F.3d 1395, 1402 (6th Cir. 1995)).

As to ERISA preemption of Air Evac's breach of contract claim, the court explained the following framework, which will also govern the present matter:

> In the case before the court, Air Evac's breach of contract claim is predicated on the existence of a contract implied in fact. This means that Air Evac relies on the conduct of the parties to make its claim, such as MMO's previous payments to Air Evac and MMO's representations to its insured members. If in establishing MMO's representations, Air Evac relies on terms within an ERISA plan, the court may need to interpret the terms of the plan to decide the issue. In this scenario, Air Evac would arguably be seeking to obtain plan benefits. However, if Air Evac does not rely on the terms of an ERISA plan in making its argument, the claim need not be classified as seeking

---

[2]     The court does not repeat such analysis (Order of Feb. 28, 2017, 12–16), in its entirety, in the present Order.

plan benefits; the fact-finder would simply analyze whether an independent contract between MMO and Air Evac exists.

(Order of Feb. 28, 2017, 17.) Applying this framework to Air Evac's Motion for Judgment on the Pleadings, the court concluded: "Since Air Evac broadly referenced MMO's representations to its insured members in support of its contract claim, the court cannot determine at this stage if these representations include statements contained within an ERISA plan." (*Id*.)

With respect to the present Motions for Partial Summary Judgment regarding ERISA preemption of Air Evac's contract claim, the court finds that MMO has failed to establish that the remedy sought by Air Evac is primarily ERISA plan related. The Sixth Circuit instructs that, "[i[n deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by plaintiffs." *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (citing *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 806 (6th Cir.1999)). Air Evac seeks damages as a result of the alleged breach of an implied contract between Air Evac and MMO. In bringing its claim, Air Evac makes no mention of ERISA plans, nor does it reference any MMO representations to MMO-insured patients regarding their ERISA plans in establishing its claim. Air Evac presents evidence to support its contention that MMO did not reference ERISA, or any underlying plans, when determining whether or not to pay charges billed by Air Evac. (Quiring Dep. at 48–49.) On the other hand, MMO presents a declaration of one of its officers stating that for twelve Air Evac claims involving MMO-insured patients with ERISA plans, "Medical Mutual denied coverage . . . based upon the terms of a group health plan established under ERISA."[3]

---

[3] Air Evac challenges the consideration of this evidence in its Motion to Strike. However, as discussed below, the court denies the Motion to Strike as moot due to the fact that MMO's claim fails even when the challenged evidence is considered.

(Quiring Decl. at ¶ 7.) Apart from this conclusory statement, MMO does not cite any of its communications with MMO-insured patients stating that their claims were denied based on the specific terms of their ERISA plans. Also missing from MMO's defense of its claim is any evidence demonstrating that Air Evac relied on MMO statements regarding ERISA in support of its contract claim.

Curiously, MMO itself states the following in support of its assertion that it was not required to disclose the ERISA plans to Air Evac: "These twelve ERISA plans are not relevant to the dispute. Indeed, Air Evac, has not brought claims for payment under terms of any member's specific plans, and instead alleges that a distinct contract exists between it and Medical Mutual." (Pl.'s Opp'n to Def.'s Mot. to Strike 3– 4.) The court agrees with MMO on this point, and it must follow that the ERISA plan is not primarily related to Air Evac's claim. As in *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Oklahoma, Inc.*, 944 F.2d 752, 755 (10th Cir. 1991), Air Evac has "not alleged any conduct on the part of [MMO] which relates to the administration of the plan, to the processing of any covered claim, or which impinges on any employee's ERISA rights." Furthermore, the evidence establishes that the denial of payment to Air Evac was "a mere consequence of its denial of coverage to [the patient;] [the plaintiff] does not claim any rights under the plan, and does not claim any breach of the plan contract." *Id.* at 754.

This outcome is consistent with this court's observation that "courts generally find that preemption does not exist when a state law contract claim is based upon a relationship that does not involve the ERISA plan itself." (Order of Feb. 28, 2017, 15) (citing *Marks*, 342 F.3d at 453; *Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999)). Here, Air Evac "patients are not a party to this action" and "[their] rights to receive benefits

-9-

under the plan [are] not at issue." *Hospice of Metro Denver, Inc.*, 944 F.2d at 754. The present facts are readily distinguishable from *Zuniga*, 52 F.3d at 1397, wherein a plaintiff doctor was denied preferred provider status under particular ERISA plans, and therefore, could not receive reimbursement for services provided. Because Zuniga had a previous settlement agreement with Blue Cross and Blue Shield of Michigan, which guaranteed he would not be treated differently from any other provider, Zuniga sued for breach of the agreement. *Id*. The court held that it could only evaluate a potential breach of agreement by reading the relevant ERISA plans and determining how the plans qualified preferred providers. *Id*. at 1402. Again, by contrast, there is no present allegation by Air Evac of MMO denial under particular ERISA plans.

Ultimately, the court "will not conclude that state-law claims are preempted where their 'effect on employee benefits plans is merely tenuous, remote or peripheral.'" *Marks*, 342 F.3d at 452 (citing *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991)). Accordingly, the court grants Air Evac's Motion for Partial Summary Judgment, as to MMO's claim for ERISA preemption of Air Evac's state breach of contract claim. The court denies MMO's Motion for Partial Summary Judgment, as to ERISA preemption of Air Evac's breach of contract counter-claim.

Having granted Air Evac's Motion for Partial Summary Judgment as to ERISA preemption, the court denies Air Evac's Motion to Strike as moot. Air Evac asks the court to strike paragraphs six through eight of Quiring's Declaration regarding member ERISA plans due to MMO's failure to produce and identify said plans during discovery. While Air Evac's argument is well-taken, even when considering Quiring's Declaration in its entirety, MMO's ERISA preemption claim still fails.

### B. Air Evac's Breach of Contract Counterclaim

Air Evac seeks summary judgment on its breach of implied-in-fact contract counterclaim. It contends that it is reasonably certain that an agreement that MMO would pay Air Evac's billed charges for services to MMO's insureds was intended. Specifically, Air Evac points to the following factual assertions to demonstrate a reasonably certain agreement: MMO understood that it had an obligation to pay for air ambulance services, based on deposition testimony; MMO previously paid for Air Evac services at the full billed rate; and MMO routinely paid the full billed charges of other air ambulance providers in the past. Furthermore, Air Evac asks the court to order MMO to pay for its past services at Air Evac's normal billing rate because, it contends, the parties impliedly agreed to such rate. Alternatively, Air Evac argues that the court should determine that its full billed rate constitutes a reasonable price term, asserting that the ADA contemplates that air carriers will set their own rates in response to market forces.

In response, MMO argues that Air Evac has failed to prove the basic elements of its contract claim, including offer, acceptance, consideration, and a meeting of the minds. With respect to these elements, MMO emphasizes the failed negotiations between MMO and Air Evac in September and November 2014, as evidence that there was no offer, nor acceptance. It argues that consideration was not provided by Air Evac and that MMO cannot be required to pay whatever price Air Evac chooses. It also notes the lack of clarity regarding the terms, among other factors, as evidence that there was no meeting of the minds. As to the rate of payment, MMO contends that the court typically may not supply the price term under Ohio law absent evidence of any agreement on the price. It adds that supplying a price term would bring the court within the ambit of ADA preemption, which

precludes enforcement of any state law related to the price of an air carrier.[4] Nonetheless, if the court were to supply a price term, MMO argues that it should not be Air Evac's full-billed charges.

Under Ohio law, the "existence of an implied-in-fact contract, as with an express contract, 'hinge[s] upon proof of all the elements of a contract.'" *GEM Indus., Inc. v. Sun Trust Bank*, 700 F. Supp. 2d 915, 922 (N.D. Ohio 2010) (quoting *Stepp v. Freeman*, 694 N.E. 2d 510, 514 (Ohio Ct. App. 1997)). These elements are "offer, acceptance, consideration, and a meeting of the minds." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 817 (N.D. Ohio 2006). However, "[e]xpress contracts diverge from implied-in-fact contracts in the form of proof that is needed to establish each contractual element." *Stepp*, 694 N.E. at 514. Specifically, "[i]n express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance." *Id*. By contrast, "'in implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding.'" *Ramsey v. Allstate Ins. Co.*, 514 F. App'x 554, 558 (6th Cir. 2013) (quoting *Stepp*, 694 N.E. at 514); *see also Hercules Inc. v. U.S.*, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." (internal quotation marks omitted)). Moreover, "'[t]o establish a contract implied in fact a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended.'" *Ramsey*, 514 F. App'x at 558 (6th Cir. 2013) (quoting *Stepp*, 694 N.E. at 514).

---

[4]        The court addresses this issue in Section C, below.

The court finds that Air Evac has failed to satisfy its burden as the moving party with respect to its breach of contract counterclaim. The record does not establish the absence of a genuine dispute of material fact as to whether an implied-in-fact contract existed between the parties. On one hand, Air Evac provided air ambulance services to MMO-insured patients. Air Evac billed MMO for its price of providing such services, which Air Evac's alleges to constitute the price term of the implied contract. It is undisputed that MMO has previously paid Air Evac in response to billing for its services, in part and in full. This conduct could demonstrate a course of dealing between the parties to prove a meeting of the minds. *See Heaton v. Rohl*, 954 N.E.2d 165, 173 (Ohio Ct. App. 11 2011) (affirming finding that the course of dealing between the parties over a three-year period proved a meeting of the minds and implied contract following bench trial).

On the other hand, there is evidence on the record indicating that it was not reasonably certain that an agreement was intended. Most notably, MMO has presented evidence showing that efforts between the parties to enter into an express contract failed on two occasions in 2014: first, when Air Evac rejected MMO's offer to enter into an express contract at MMO's pre-determined rates; and second, when MMO did not accept Air Evac's offer to enter into an express contract at 97 percent of Air Evac's normal billing rates. *See Conglomerated Hosts, Ltd. v. Jepco, Inc.*, 953 F.2d 1384 (Table) (6th Cir. 1992) (finding no implied-in-fact contract, under Tennessee law, where the circumstances included "the parties' failure to advance beyond negotiations"). The failed negotiations and MMO's prior conduct of paying only part of Air Evac's billed charges also contradict Air Evac's contention that there was a meeting of the minds. *See KLG Mobile Intensive Co., LLC v. Salem Community Hosp.*, No. 06 CO 1, 2007 WL 446022, at *6 (Ohio Ct. App. Feb. 9, 2007) (affirming finding of no implied-in-fact contract, following bench trial, where plaintiff failed

to establish "any certain and definite contract terms", among other issues). MMO's repeated refusal to pay Air Evac for its full billed charges, and its evidence that this was the case in 90 percent of the instances at issue, could suggest that the parties did not intend an agreement. Given these disputed facts regarding whether there was an intended agreement, the court denies Air Evac's Motion for Summary Judgment as to its breach of implied contract counterclaim. Having denied summary judgment as to Air Evac's implied contract counterclaim, the court need not address the merits of the parties' arguments regarding the price term of the purported contract.

### C. ADA Preemption

Air Evac moves for summary judgment on MMO's claim, alleged in Count I of the Complaint, that the ADA precludes Air Evac from recovering fees for air transportation absent an express agreement for such transportation. First, Air Evac argues that the ADA does not require air carriers to have an express contract in order to collect for their services. Rather, Air Evac asserts an implied contract may be enforced consistent with the ADA because it is not dictated by the state, but is a voluntary undertaking of the air carrier. Air Evac adds that MMO's assertion that air ambulance services may not collect payment under an implied contract contradicts the ACA because, it contends, the ACA protects patients from the financial consequences of medical treatment beyond their control.

MMO counters that Air Evac has made no argument as to why MMO's request for a declaration of ADA preemption as to Air Evac's underlying state claim for quantum merit is subject to summary judgment. As to Air Evac's underlying implied contract claim, MMO briefly argues that the ADA preempts such claim because Air Evac cannot establish its claim without relying upon an implied obligation to pay the reasonable value for services under Ohio law. This is so because, MMO

-14-

argues, there was no meeting of the minds on the price for Air Evac's services.

*1. ADA Preemption of Contract Claim*

The court examined ADA preemption in its Order denying Air Evac's Motion for Judgment on the Pleadings, and does not repeat its background or determinations in their entirety here. (Order of Feb. 28, 2017, 4–12.) With respect to ADA preemption of Air Evac's contract claim, the court explained that "a contract implied in law will be preempted by the ADA and a contract implied in fact will not be." (*Id*. at 7.) The court held that:

> Whether MMO's representations to its members or MMO's previous payments to Air Evac qualify as conduct sufficient to establish a contract implied in fact is a question of fact which the court cannot determine from the state of the record currently before it. Since the court cannot determine if a contract implied in fact exists, the court cannot decide as a matter of law whether the ADA will preempt Air Evac's contract claim.

(*Id*. at 8.) In keeping with this holding, it follows that the court, at this stage, must again seek to determine whether Air Evac has alleged conduct sufficient to establish a contract implied in fact. *See Hickox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) ("[I]f Hickox-Huffman has adequately pleaded breach of a contract provision that US Airways voluntarily entered into, her claim is not preempted [by the ADA]."); *Osband v. United Airlines, Inc.*, 981 P.2d 616, 622 (Colo. App. 1998) (remanding Federal Aviation Administration Authorization Act preemption claim to "determine if, indeed, plaintiffs' complaint alleges conduct which manifested a mutual intent to enter into a contract sufficient to assert a claim that a contract implied in fact existed.").

Air Evac has alleged conduct sufficient to assert a claim of breach of implied-in-fact contract. *See Hickox-Huffman*, 855 F.3d at 1064 (finding that plaintiff alleged sufficient facts to establish breach of contract claims, both implied and express, thus satisfying the exception to ADA preemption of claims against airline). As discussed above, the elements of an implied-in-fact contract

-15-

include mutual assent, consideration, and a meeting of the minds. With respect to "implied-in-fact contracts[,] the parties' meeting of the minds is shown by the surrounding circumstances." *Stepp*, 694 N.E. at 514. Air Evac alleges that the conduct of the parties, most notably MMO's past conduct of paying Air Evac's billed charges for Air Evac services to MMO-insured patients, demonstrates a mutual intention to enter into a contract and a meeting of the minds. Air Evac alleges that the price term of the implied-in-fact contract is its full billed rate for the services. It contends that MMO understood that it had an obligation to pay for air ambulance services and that it has fully paid charges from other air ambulance providers in the past. Air Evac also alleges that it provided consideration in the form of medical care to MMO-insured patients. *See Coldwell Banker Residential Real Estate Servs., Inc. v. Bishop*, 498 N.E.2d 1382, 1885 (Ohio Ct. App. 1985) ("In general, if the consideration given is sufficient to support a contract it does not matter from or to whom it moves."). Indeed, MMO does not move for summary judgment on the merits of Air Evac's implied contract claim, nor did it move to dismiss such claim on the merits for legal insufficiency. To be sure, as discussed above regarding the merits of Air Evac's breach of contract claim, it is certainly disputed whether an implied-in-fact contract actually existed. However, for the purposes of determining ADA preemption, the court merely examines the sufficiency of Air Evac's claim for breach of implied contract.

Contrary to MMO's contention, the possibility that a reasonable price term may be supplied for the contract implied-in-fact—if it is found to exist—does not effect whether the ADA preempts the breach of contract claim.[5] *See Wagner v. Summit Air Ambulance*, *LLC*, No. CR-17-57, 2017 WL

---

[5]    In its breach of contract claim, Air Evac primarily argues that MMO impliedly agreed to pay Air Evac's full billed charges. However, it argues, in the alternative, that if the court finds ambiguity regarding the price term, it should supply a

4855391, at *5 (D. Mont. Oct. 26, 2017) (finding that the ADA did not preempt patients' breach of implied-in-fact contract claim against air ambulance where plaintiffs' alleged the price term only to be the "reasonable worth" of services due to the alleged absence of a specific price term); *cf. Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843, 2017 WL 1026012, at *4–*6 (W.D. Okla. Mar. 15, 2017) (finding that the ADA preempted patients' breach of implied contract claim against air ambulance where patients argued that air ambulance did not disclose its rates and impliedly agreed to the "reasonable value" of services). The determination of a reasonable price term of a contract is "a factual determination." *Keeva J. Kekst Architects, Inc. v. George*, No. 70835, 1997 WL 253171, at *6 (Ohio Ct. App. 1997). Such determination could be made only *after* reaching conclusion that the parties demonstrated mutual assent to voluntarily enter into a contract, necessarily establishing that the airline entered into a "self-imposed obligation." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) ("We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's

---

reasonable rate of reimbursement. The law appears to indicate that under some circumstances the court would have the authority to find the existence of a contract and supply the reasonable price term. *See Mantia v. House*, 900 N.E.2d 641, 643 (Ohio Ct. App. 2008) ("In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter."); *Litsinger Sign Co. v. Am. Sign Co.*, 11 Ohio St.2d 1, 14 (1967) ("Even though American's purported acceptance stated the price for Litsinger's services 'to be determined,' . . . it merely refers to Litsinger's offer to do the work for 'ordinary industry prices,' a way of filling a blank on its purchase order in the absence of a specified liquidated amount."); 17 John J. Dvorske, *et al*. Ohio *Jur.*, § 35 (3d 2018) ("In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter."). At this juncture, as it is factually disputed whether a contract exists and as MMO has not moved for summary judgment on Air Evac's breach of contract claim, the court makes no determination as to whether the price term was definite, nor whether the factual circumstances are such that a price term must be supplied.

alleged breach of its own, self-imposed undertakings."). As the district court in *Wagner* recently explained: "Nothing in the ADA prohibits an air carrier from opting for a default term of consideration. . . . The ADA would not preempt the suit if [MMO has] incorporated the term as [Air Evac] allege[s]." 2017 WL 4855391, at *4.

In contrast to the present case, *Scarlett v. Air Methods Corporation*, No. 16-cv-2723, 2018 WL 2322075, (D. Colo. May 22, 2018), illustrates circumstances where a district court found ADA preemption of an implied-*in-law* contract claim. In *Scarlett*, the court found that plaintiff patients bringing a breach of contract claim against an air ambulance were not "merely" asking the court to "provide a price term" of an implied-in-fact contract, but were in fact alleging "what amounts to a contract implied in law." *Id*. at *8 (concluding that the ADA precluded plaintiffs' implied-in-law contract claim). Unlike in *Scarlett*—wherein the plaintiff patients argued that the air ambulance defendant "implicitly agreed to a price to be determined by operation of law" and did not allege a definite price term—the present breach of contract claim alleges a contract implied in fact, as well as a definite price term (the full charges billed to MMO). *Id*. at *7. In sum, "[b]ecause Air Evac's claim is for breach of contract of a voluntarily assumed contractual undertaking, and [it] pleads breach of contract", *Hickcox-Huffman*, 855 F.3d at 1064, the court finds that the ADA does not preempt Air Evac's claim for breach of contract. Accordingly, the court grants Air Evac's Motion for Partial Summary Judgment as to MMO's claim that the ADA preempts Air Evac's contract claim.

### 2. ADA Preemption of Quantum Merit Claim

The court's prior findings with respect to ADA preemption of Air Evac's claim in state court for quantum merit remain unchanged by Air Evac's Motion for Partial Summary Judgment. Air Evac does not specifically discuss ADA preemption as to its underlying quantum merit claim. Rather, its

arguments focus on preemption of its implied contract claim. As to preemption of Air Evac's quantum merit claim, the court stated in its Order denying Air Evac's Motion for Judgment on the Pleadings: "In determining whether an unjust enrichment or quantum meruit claim is preempted by the ADA, courts apply a similar analysis as above: whether the obligation is self-imposed or state-imposed." (Order of Feb. 28, 2017, 9) (citing *Overka v. Am. Airlines, Inc.*, 790 F.3d 36, 40 (1st Cir. 2015)). With respect to ADA preemption of Air Evac's quantum merit claim based on state law, the court found that "Air Evac's common law claims of unjust enrichment and quantum meruit which are based on state-imposed notions of fairness and equity will be preempted by the ADA." (Order of Feb. 28, 2017, 9.) With respect to ADA preemption of Air Evac's underlying claim for quantum merit, to the extent that such claim in predicated on federal law, the court found:

> However, an unjust enrichment / quantum meruit or other claim predicated on federal law, to the extent that such a claim might exist, would avoid ADA and ERISA preemption. Because the court cannot determine from the record whether any claim based in federal law exists, the court cannot grant Air Evac's Motion in regard to a federal unjust enrichment, quantum meruit or other claim.

(*Id*. at 18.)

Air Evac makes no attempt to clarify the record regarding whether its underlying quantum merit claim is predicated on federal law. Likewise, MMO does not attempt to clarify the record, nor move for summary judgment, as to Air Evac's quantum merit claim. Therefore, the court's findings in its Order of February 28, 2017 remain applicable. As it is still unclear whether Air Evac's underlying quantum merit claim is predicated on federal law, Air Evac's Motion for Partial Summary Judgment on MMO's claim of ADA preemption as to Air Evac's underlying state quantum merit claim is denied.

### D. MMO's Unjust Enrichment Claim

Air Evac argues that, because MMO's ADA preemption claims fails, MMO's unjust enrichment claim in Count III must also fail because the claim is premised on MMO's ADA preemption theory. In response, MMO concedes that its claim in Count III, which was pleaded in the alternative, "is undoubtedly based upon state law and would appear to fall within the class of claims deemed preempted by the ADA under the Court's prior Order." (Pl.'s Opp'n to Mot. for Partial Summ. J. 24.) MMO adds that it will withdraw the claim if the court determines that the parties' unjust enrichment and quantum merit claims are preempted.

The court grants Air Evac's Motion for Partial Summary Judgment as to MMO's unjust enrichment claim. As MMO has conceded, and clarified for the record, its claim for unjust enrichment falls within the class of claims preempted by the ADA pursuant to the court's Order. (Order of Feb. 28, 2017, 18.)

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Air Evac's Motion for Partial Summary Judgment (ECF No. 47). Air Evac's Motion for Partial Summary Judgment is granted as to the following: MMO's ERISA preemption claim (Count II); MMO's claim of ADA preemption as to Air Evac's breach of contract claim (Count I); and MMO's claim of unjust enrichment (Count III). Air Evac's Motion for Partial Summary Judgment is denied as to the following: Air Evac's breach of contract counterclaim (Counterclaim Count I); and MMO's claim

of ADA preemption as to Air Evac's quantum merit claim (Count I). The court denies MMO's Motion for Partial Summary Judgment (ECF No. 45). The court also denies Air Evac's Motion to Strike (ECF No. 53) as moot.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT COURT

September 17, 2018